UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD UNDERWOOD,

    Plaintiff,                         CIVIL ACTION NO. 09-10448

    v.                               DISTRICT JUDGE ROBERT H. CLELAND

CORRECTIONAL MEDICAL            MAGISTRATE JUDGE MARK A. RANDON
SERVICES, CRAIG HUTCHINSON,
M.D., GEORGE PRAMSTALLER, D.O.,
and PAUL PIPER, M.D.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION DENYING DEFENDANTS CORRECTIONAL MEDICAL SERVICES, INC., CRAIG HUTCHINSON, M.D., AND PAUL PIPER, M.D.'S MOTION TO DISMISS (DKT. NO. 27) AND GRANTING DEFENDANT GEORGE PRAMSTALLER, D.O.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 19)**

I. INTRODUCTION

Plaintiff Reginald Underwood ("Plaintiff"), a Michigan prisoner, brought this 42 U.S.C. § 1983 action alleging that multiple defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Presently before the Court are two dispositive motions: (1) the motion to dismiss of Correctional Medical Services, Inc. ("CMS"), Craig Hutchinson, M.D. ("Dr. Hutchinson"), and Paul Piper, M.D. ("Dr. Piper") (collectively "the CMS Defendants") (Dkt. No. 27), and (2) the motion for summary judgment of George Pramstaller, D.O. ("Dr. Pramstaller"). (Dkt. No. 19) The CMS Defendants seek dismissal on the

ground that Plaintiff failed to exhaust his administrative remedies; Dr. Pramstaller, the Chief Medical Officer for the Michigan Department of Corrections ("MDOC"), contends that the case against him should be dismissed because he was not personally involved in the matters alleged in Plaintiff's Complaint and, alternatively, is entitled to qualified immunity.  Plaintiff filed responses opposing both motions.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the motions were referred to the undersigned for a Report and Recommendation ("R&R"). (Dkt. Nos. 9 and 14) Since the undersigned finds that Plaintiff properly exhausted his administrative remedies and there is no genuine issue of material fact that Dr. Pramstaller was not personally involved in Plaintiff's treatment, it is RECOMMENDED that the motion of the CMS Defendants be DENIED and the motion of Dr. Pramstaller be GRANTED.

## II.   STATEMENT OF FACTS

*A.   Background*

Plaintiff concurs with the following statement of facts set forth in the CMS Defendants' motion to dismiss.[1]

On or about February 6, 2009, Plaintiff, a prisoner incarcerated at the MDOC's Ryan Road Correctional Facility ("RRF"), filed his *pro se* Prisoner Civil Rights Complaint. (Dkt. No. 1)  Plaintiff's Complaint named CMS, Dr. Hutchinson, Dr. Piper, and Dr. Pramstaller as Defendants.  (Dkt. No. 1)

In his Complaint, Plaintiff alleges:

---

[1] *See* Dkt. No. 38, p. 1. (Non-substantive revisions have been made.)  This concurrence *does not* apply to the statements contained in the affidavit of Dr. Pramstaller, discussed below.

> The heart of this complaint is that the defendants have been, and continue to be, in violation of the prohibition on cruel and unusual punishment in that, by policy, custom and practice, they are deliberately indifferent to plaintiffs' [sic] serious medical needs by intentionally and wantonly failing to provide adequate testing and treatment for the Human immunodeficiency Virus ("HIV"). Without the testing and specialty referral treatment herein requested, Plaintiff Reginald Underwood and those similarly situated suffer an increased risk of, and actual grave illness and/or death as the result of undetected and/or untreated HIV infection.

(Dkt No. 1, ¶ 3).

Plaintiff alleges that, while incarcerated at the Southern Michigan Correctional Facility ("JMF"), he seroconverted to HIV status on May 25, 2006, after being attacked by a prisoner infected with HIV. (Dkt. No. 1, ¶ 7). Plaintiff alleges that on June 8, 2007, he was transferred from the JMF to the RRF (Dkt. No. 1, ¶ 8), and that between July 11, 2007, and February 1, 2008, numerous appointments were made with Dr. Hutchinson, an infectious disease specialist, but were always cancelled or rescheduled. (Dkt. No. 1, ¶¶ 9-16)  Despite his alleged HIV infection, Plaintiff claims that he has not received any medical treatment for his condition. (Dkt. No. 1, ¶25) As a result, Plaintiff's Complaint seeks monetary damages against Defendants for violation of the Eighth Amendment, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Plaintiff alleges that Dr. Pramstaller, as Director of the Bureau of Health Care Services for the MDOC, was "responsible for the establishment and implementation of all medical policies, procedures, customs and practices with the MDOC, including those relating to the testing and treatment of HIV infected prisoners." (Dkt. No. 1, ¶ 38)  Plaintiff contends that Dr.

Pramstaller was "made aware" that he was being denied medical treatment as a result of the ongoing civil litigation in *Hadix v. Caruso*.[2]

In response, Dr. Pramstaller attests that he was the Chief Medical Officer for the MDOC – not the Director of the Bureau of Health Care Services – from February 2002 until he retired in March of 2008 (Dkt. No. 19, Ex. A, ¶ 1), and that he had no involvement in Plaintiff's care or treatment. (Dkt. No. 19, Ex. A, ¶ 3)  Dr. Pramstaller further attests: (1) that he first became aware of the case upon receiving Plaintiff's Complaint (Dkt. No. 19, Ex. A, ¶ 3); (2) that, upon review, there are no documents on file with the Bureau of Health Care Services regarding Plaintiff's medical condition (Dkt. No. 19, Ex. A, ¶ 4); and (3) that the Quality Assurance Office identified a single document regarding Plaintiff, received on April 24, 2007, that mentions nothing about Plaintiff's HIV status. (Dkt. No. 19, Ex. A, ¶ 4 and Attachment).  As to the *Hadix* litigation, while Plaintiff's HIV status was mentioned in two memoranda, neither correspondence was directed to or mentioned Dr. Pramstaller, and the RRF is no longer part of the *Hadix* litigation. (Dkt. No. 40, pp. v-vi)

---

[2] The *Hadix* case is a class action § 1983 prisoner condition of confinement case that was filed in 1980.  As part of a consent decree entered in the case, an Office of the Independent Medical Monitor ("OIMM") was established.  Plaintiff alleges that he met with monitors from the OIMM numerous times between June 2007 and March 2008 (presumably while incarcerated at RRF). (Dkt. No. 39, p. 5)  Plaintiff claims that as a result of the reports filed by these monitors, Dr. Pramstaller knew or should have known that Plaintiff was not being treated for HIV but failed to act or intervene on his behalf. (Dkt. No. 39, pp. 4-5)

B.	*The MDOC's Grievance Procedure*

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 27, Ex. A). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received. In particular, as it relates to filing a Step III grievance,[3] the Policy requires that:

> FF.	[t]he grievant must **send** a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section **within ten business days after receiving** the Step II response. . .

(Emphasis added).

Further, in outlining what should be included in a grievance, the Policy requires, in part, that prisoners adhere to the following procedural rules:

> R.	The issues should be stated briefly and concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why,

---

[3] The CMS Defendants' claim of untimeliness is limited to Plaintiff's Step III grievance.

> how). Dates, times, places, and **names of all those involved in the issue being grieved are to be included**.

(Emphasis added).

C.  *Plaintiff's Grievance*

Plaintiff filed a single grievance in connection with the allegations made in his Complaint. (Dkt. No. 38, p. 5) In Grievance RRF 2008-09-00586-12Z, filed on October 7, 2008 (the "Grievance"), Plaintiff complained of an "offensively conspicuous denial of medical care for Grievant's special chronic condition (HIV)," which had been discussed with "CMS health care providers" without success. The Grievance named Dr. Piper, Dr. Hutchinson, Dr. Pramstaller, and CMS as "respondents" and referenced "accompanying documentation" – a three page, single spaced letter – chronicling his unsuccessful efforts to obtain medical treatment and the resulting "emotional distress." (Dkt. No. 27, Ex. D)

    1.    *Calendar for November and December 2008 and Plaintiff's Step III Appeal*

|  |  |  |  | NOVEMBER 2008 |  |  |  |
|---|---|---|---|---|---|---|---|
| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | |
|  |  |  |  |  |  | 1 | |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 | |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 | |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 | |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 | |
| 30 | | | | | | | |

November Holidays
Daylight Savings Time Ends - 2
Veterans Day - 11
Thanksgiving - 27

FREE-PRINTABLE-CALENDARS.COM

- 6 -

|        | DECEMBER 2008 |         |           |          |        |          |
|--------|---------------|---------|-----------|----------|--------|----------|
| SUNDAY | MONDAY        | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|        | 1             | 2       | 3         | 4        | 5      | 6        |
| 7      | 8             | 9       | 10        | 11       | 12     | 13       |
| 14     | 15            | 16      | 17        | 18       | 19     | 20       |
| 21     | 22            | 23      | 24        | 25       | 26     | 27       |
| 28     | 29            | 30      | 31        |          |        |          |

**December Holidays**
Christmas - 25
New Year's Eve - 31

FREE-PRINTABLE-CALENDARS.COM

After filing a Step II Appeal, Plaintiff received the RRF's Step II response. The Step II response was prepared by Latrice Hood, a Registered Nurse, and was dated November 18, 2008. On the Grievance Appeal Form, next to Nurse Hood's signature, two dates are listed as the date(s) on which the Step II response was returned to the Grievant – November 18, 2008 and December 3, 2008. However, the date of December 3, 2008 was initialed. (Dkt. No. 27, Ex. D) Plaintiff contends that he inquired about the two dates, in writing, to RRF Step II Grievance Coordinator, Frank Konieczki, who advised Plaintiff that he (Konieczki) had initialed the date of December 3, 2008, because that was the date on which he returned the Step II response to Plaintiff. (Dkt. No. 38, p. 8)

As instructed on the Grievance Appeal Form, Plaintiff mailed his Step III Appeal (and accompanying letter) to MDOC Director, Patricia Caruso, P.O. Box 30003 in Lansing, Michigan.

The letter was dated December 8, 2008. Plaintiff alleges that he mailed out the Step III Appeal "well within the 10 business days provided for in Policy Directive 03.02.130." (Dkt. No. 38, p. 9) The Step III Appeal was stamped "received" by the MDOC on December 19, 2008. (Dkt. No. 27, Ex. D) The response to the Step III appeal noted that the Grievance "was filed in an untimely manner;" however, the Grievance was nevertheless denied on the merits. (Dkt. No. 27, Ex. D)

### III. ANALYSIS

#### A. *Standard of Review*

##### 1. *Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(a)*

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266 (1994). However, prisoner suits, alleging constitutional deprivations while incarcerated, are subject to the additional prerequisite of satisfying the administrative exhaustion requirements of 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

### 2. Fed. R. Civ. P. 56

Dr. Pramstaller moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al.*, 475 U.S. 547, 587 (1986); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).

B.  ***The Prison Litigation Reform Act***

   ***1. The Meaning and Purpose of Proper Exhaustion***

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting*, Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94.

### a. Plaintiff's Grievance and Attachments are Sufficient to Satisfy §R of the Policy

With respect to the content of grievances: a prisoner must allege "mistreatment or misconduct on the part of the defendant[s]" in his grievance. *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). "This standard is not a particularly strict one." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

> In describing the alleged mistreatment or misconduct, ... we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

*Burton*, 321 F.3d at 575. This relaxed standard is consistent with the general practice of liberally construing pro se prisoners' filings. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106 (1993); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999). Whether, the grievance was sufficient to give prison officials fair notice of the alleged mistreatment must be determined in light of the prisoners subsequent complaint. *Bell*, 450 F.3d at 654.

In this case, Plaintiff's lawsuit seeks damages for the CMS Defendants' and Dr. Pramstaller's ("Defendants") failure to provide adequate testing and treatment for his HIV. Plaintiff's complaint allegations are factually similar to the issues about which he grieved. The Grievance was filed in response to an alleged "conspicuous denial of medical care for Grievant's chronic condition (HIV)" and stated that "discussions with CMS health care providers have been unsuccessful." Further, the letter referenced in the Grievance recounts Plaintiff's efforts to be

seen and receive treatment for HIV. In particular, the Grievance detailed canceled or rescheduled doctor appointments; a failure to complete ordered lab work prior to scheduled appointments with doctors (including Dr. Hutchinson); failure to receive treatment (i.e. protease inhibitors); resulting emotional distress; and the fact that Plaintiff was attempting to exhaust administrative remedies "prior to filing an appropriate deliberate indifference federal action."

Moreover, CMS, Dr. Piper, Dr. Hutchinson, and Dr. Pramstaller were named as respondents in the Grievance – and defendants in Plaintiff's subsequent lawsuit. In the Grievance, Plaintiff complained that the "Respondents had intentionally and unreasonably denied and/or delayed Grievant's access to medical care." Therefore, whether factually correct or not, the CMS Defendants and Dr. Pramstaller were fairly on notice that Plaintiff believed them to be responsible for his failure to receive testing and treatment for his HIV, and the content of his Grievance, having satisfied the Policy § R, was administratively exhausted.

      **b.**      **Plaintiff's Step III Grievance was Timely**

The CMS Defendants contend that Plaintiff's Step III Grievance Appeal was untimely, because it "was filed more than one month after he received his Step II Grievance Appeal Response." The CMS Defendants further contend that this violated §FF of the policy, which they claim sets a 10-day time limit. These contentions are not well taken.

Section FF of the Policy, requires a grievant to *send* any Step III Appeal within 10 *business* days *after receiving* the Step II Response. Plaintiff claims, of the two dates listed as dates on which the Step II Response was returned to him, he relied upon the date of December 3, 2008 (after discussing the matter with Step II Grievance Coordinator, Frank Konieczki).

Pursuant to the policy, Plaintiff was, therefore, required to send his appeal to the MDOC Director within 10 business days – by December 17, 2008.[4] The requirement that the appeal be *sent* – as opposed to *received* within 10 business days – is significant. There is no dispute that the appeal was marked *received* by the MDOC on Friday, December 19, 2008. However, a reasonable time for the mail to be sent from RRF (a prison) in Detroit to the MDOC's post office box in Lansing, retrieved from the post office box and marked as received should be *at least* two (2) days. Thus, the fact that the MDOC marked the appeal received on Friday, December 19, 2008, strongly suggests that Plaintiff mailed (sent) the Step III Appeal to the MDOC on or before December 17, 2008. Accordingly, reviewing these facts in a light most favorable to Plaintiff, the undersigned finds that Plaintiff's Step III Appeal was timely filed and, therefore, properly administratively exhausted.

C.  ***Dr. Pramstaller's Motion for Summary Judgment***

Dr. Pramstaller moves for summary judgment on two grounds: (1) that as Chief Medical Officer for the MDOC, he was neither aware of nor personally involved in the alleged lack of medical treatment suffered by Plaintiff; and (2) that he is entitled to qualified immunity. Dr. Pramstaller's motion is clearly meritorious on the first ground – rendering the second ground moot.

---

[4] The Policy does not contain a procedure for the computation of days. However, the Federal Rules of Civil Procedure require the first day of the event (i.e., December 3, 2008) be excluded from the computation period. Fed R. Civ. P 6(a)(1). In addition, the common understanding of "business days" excludes weekends; therefore, 10 business days from December 3, 2008, is December 17, 2008 (see calendar).

### 1. *Eighth Amendment Denial of Adequate Medical Care*

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

### 2. *Respondeat Superior*

Allegations premised on respondeat superior liability are foreclosed in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). In *Bellamy v Bradley*, the Sixth Circuit

- 14 -

stated that in order to impose liability on supervisory personnel, a Plaintiff must show more than having brought offending conduct to the attention of supervisory officials:

> In *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Hays*, 668 F.2d at 872-74.

Moreover, a supervisory official's awareness of alleged *illegal* conduct *after the fact* does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (WD Mich, 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v Haydon*, 853 F.2d 418, 429 (6th Cir., 1988), *cert. den.*, 488 U.S. 1007 (1989). The supervisor must have directly participated in the alleged *wrongful* conduct:

> [A] supervisory official's failure to, control, or train the offending individual is not actionable, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."

*Id*. at 429.

Plaintiff's allegations amount to a failure to act on the part of Dr. Pramstaller. There is no allegation that Dr. Pramstaller approved of the alleged unconstitutional conduct of the CMS Defendants. There is, similarly, no allegation that he encouraged the misconduct or participated in it in any way. Indeed, Dr. Pramstaller avers that he had no knowledge of Plaintiff's situation

until he received the instant lawsuit. The documents referenced from the *Hadix* litigation do not change the analysis but rather support Dr. Pramstaller's position.[5] Because it is clear that Dr. Pramstaller had no involvement in Plaintiff's alleged mistreatment, his motion should be granted and the issue of immunity is moot.

## IV. RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the CMS Defendants' motion to dismiss be DENIED[6] and Dr. Pramstaller's motion for summary judgment be GRANTED.

## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes

---

[5] Plaintiff's attached over 130 unnumbered pages of exhibits to his brief in response to Dr. Pramstaller's motion. (The undersigned numbered the court filing pages for ease of reference.) The documents were a compilation of OIMM reports dealing primarily with the health and safety of the prisons' dialysis patients. Of these documents, only three (3) directly or indirectly mentioned Plaintiff. First, on page 85, the report describes "Patient S" – an individual with a situation similar to Plaintiff's Complaint allegations. However, Patient S is not named. The report was apparently filed with the district court (in the *Hadix* case), but there is no indication that the report was sent to Dr. Pramstaller. Second, on page 111, a memo (dated February 25, 2009) was sent to Lesley Jones, Administrative Assistant to Consent Decree Administration from Dr. Robert Cohen, Associate Monitor, *Hadix v. Caruso*. The memo was written so that *Jones* could schedule an "in-person consultive visit with Dr. Hutchinson with current lab work. . . as soon as possible. However, Dr. Pramstaller was not copied on this memo. Last, starting on page 112, a memo (dated April 12, 2008) was sent to Barb Hladki, *Hadix* Consent Decree Administrator from Dr. Robert Cohen. Again, the memo described Plaintiff's ordeal in attempting to receive treatment. Once again, however, Dr. Pramstaller was not copied on this memo.

[6] This includes Dr. Pramstaller, to the extent he raised the exhaustion issue in his reply brief.

a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

*Note this especially, at the direction of Judge Cleland:* any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of objections, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                              S/Mark A. Randon  
                                              MARK A. RANDON  
                                              UNITED STATES MAGISTRATE JUDGE

Dated:  January 13, 2010

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 13, 2010, by electronic and/or ordinary mail.*

                                              *s/Melody R. Miles*  
                                              *Case Manager to Magistrate Judge Mark A. Randon*