UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD UNDERWOOD #559281,

       Plaintiff,                              CIVIL ACTION NO. 09-10448

     v.                                      DISTRICT JUDGE ROBERT H. CLELAND

CORRECTIONAL MEDICAL               MAGISTRATE JUDGE MARK A. RANDON
SERVICES, CRAIG HUTCHINSON,
M.D., GEORGE PRAMSTALLER, D.O.,
and PAUL PIPER, M.D.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION GRANTING DEFENDANTS
CORRECTIONAL MEDICAL SERVICES, INC., CRAIG HUTCHINSON, M.D.,
AND PAUL PIPER, M.D.'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51)**

**I. INTRODUCTION**

Plaintiff Reginald Underwood ("Plaintiff"), a Michigan prisoner, brought this 42 U.S.C. § 1983 action alleging that multiple defendants were deliberately indifferent to his need for education, testing and/or treatment for his Human Immunodeficiency Virus ("HIV") infection, in violation of the Eighth Amendment. Before the Court is the motion for summary judgment of defendants Correctional Medical Services, Inc. ("CMS"), Craig Hutchinson, M.D. ("Dr. Hutchinson"), and Paul Piper, M.D. ("Dr. Piper") (collectively "the CMS Defendants") (Dkt. No. 51).

The CMS Defendants seek dismissal for different reasons. Dr. Hutchinson maintains that (based on Plaintiff's blood lab values and the treatment provided) he was neither subjectively aware that Plaintiff's HIV infection posed a serious risk of harm, nor deliberately indifferent to Plaintiff's

-1-

medical condition. Dr. Piper contends that he only treated Plaintiff on one occasion – unrelated to Plaintiff's HIV condition – and that he relied on the evaluation provided by Dr. Hutchinson (an HIV specialist). Last, CMS contends that Plaintiff has failed to identify any unconstitutional policy, practice or procedure connected to CMS. Plaintiff filed a response opposing the CMS Defendants' motion. (Dkt. No. 54) Pursuant to 28 U.S.C. § 636(b)(1)(B), the case was referred to the undersigned for disposition of all pretrial matters. (Dkt. Nos. 9 and 14)

As discussed below, the undersigned finds that: (1) under current and pre-existing Department of Health and Human Services ("DHHS") guidelines, Plaintiff's series of blood lab values *did not require* treatment for his HIV with antiretroviral ("ARV") drugs; (2) Dr. Piper reasonably relied on the treatment provided by Dr. Hutchinson; and (3) Plaintiff has failed to identify any unconstitutional policy, practice or procedure connected to CMS. Therefore, **IT IS RECOMMENDED** that the motion of the CMS Defendants be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**.

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff filed this action, *pro se*, while incarcerated at the MDOC's Ryan Road Correctional Facility ("RRF"). (Dkt. No. 1) Plaintiff's complaint names CMS, Dr. Hutchinson, Dr. Piper, and Dr. Pramstaller[1] as defendants. (Dkt. No. 1)

---

[1] Plaintiff's claims against Dr. Pramstaller were dismissed on March 19, 2010. (Dkt. No. 48)

Plaintiff alleges, in part, that:

> [t]he heart of this complaint is that the defendants have been, and continue to be, in violation of the prohibition on cruel and unusual punishment in that, by policy, custom and practice, they are deliberately indifferent to plaintiffs' [sic] serious medical needs by intentionally and wantonly failing to provide adequate testing and treatment for the Human Immunodeficiency Virus ("HIV"). Without the testing and specialty referral treatment herein requested, Plaintiff Reginald Underwood and those similarly situated suffer an increased risk of, and actual grave illness and/or death as the result of undetected and/or untreated HIV infection.

(Dkt No. 1, ¶ 3).

Plaintiff alleges that, while incarcerated at the Southern Michigan Correctional Facility ("JMF"), he seroconverted to HIV status, on May 25, 2006, after being attacked by a prisoner infected with HIV. (Dkt. No. 1, ¶ 7). Plaintiff further alleges that on June 8, 2007, he was transferred from the JMF to the RRF (Dkt. No. 1, ¶ 8), and that between July 11, 2007, and February 1, 2008, numerous appointments were made with Dr. Hutchinson, an infectious disease specialist; however, the appointments were always cancelled or rescheduled. (Dkt. No. 1, ¶¶ 9-16) Despite being infected with HIV, Plaintiff claims that he has not received any medical treatment for his condition. (Dkt. No. 1, ¶25) As a result, he seeks monetary damages against defendants for violation of the Eighth Amendment, intentional infliction of emotional distress, and negligent infliction of emotional distress.

## B. *The Treatment of HIV*

Since there is currently no cure for HIV, the primary treatment objectives (with antiretroviral therapy ("ART")) are four-fold: to (1) "reduce HIV associated morbidity and prolong the duration and quality of survival, [(2)] restore and preserve immunologic function, [(3)] maximally and

durably suppress plasma HIV viral load, and [(4)] prevent HIV transmission." *See*, *Panel on Antiretroviral Guidelines for Adults and Adolescents. Guidelines for the use of antiretroviral agents in HIV-1-infected adults and adolescents*. Department of Health and Human Services. January 10, 2011; p. 24. Available at http://www.aidsinfo.nih.gov/ContentFiles/AdultandAdolescentGL.pdf.

In addition to improving survival rates, ART reduces complications from AIDS in patients suffering from advanced HIV disease. *Id.* at 28. DHHS, therefore, periodically publishes guidelines "to provide recommendations for HIV care practitioners based on current knowledge of ARV drugs used to treat adults and adolescents with HIV infection in the United States." *Id*. at 1. These guidelines include recommendations for when to begin ART for patients infected with HIV. Contrary to what one might expect, immediate treatment with ART is *not* advised in every HIV patient. Rather, the initiation of treatment depends upon the patient's CD4 count.[2]

Relevant to the instant action, DHHS has updated its guidelines six times: October 2006, December 2007, January 2008, November 2008, December 2009 and most recently on January 11, 2011. As of January 10, 2011, the DHHS Panel advises that "ART should be initiated in all patients with a history of an AIDS-defining illness or with a CD4 count <350 cells/mm$_3$. *Id.* at 27. Under the 2009 and 2011 guidelines, ART is now also moderately to strongly *recommended* [but not required] for patients with CD4 counts between 350 and 500 cells/mm$_3$." *Id.* This is a recommendation because, as of January 10, 2011, there are **no** available "randomized controlled

---

[2] The CD4 laboratory blood test measures the number of CD4 cells in a sample of a patient's blood, in order to assess the status of the immune system. CD4 cells are part of the body's immune system. CD4 cells help identify, attack, and destroy bacteria and viruses that enter the body. However, when a patient is infected with HIV, the HIV infects and kills the patient's CD4 cells. Thus, as a patient's HIV infection progresses, the CD4 count may decrease. Accordingly, the CD4 count can be used to evaluate and track the progression of HIV infection and disease. (Taken from: www.labtestsonline.org).

trials" showing benefits of ART for patients with CD4 levels *greater than 350 cells/mm3. Id.* Over time, the guidelines have continued to be revised in favor of earlier treatment (i.e. for HIV patients with higher CD4 levels).[3]

C.  *Monitoring of Plaintiff's CD4 Levels*

It does not appear that, at any time relevant to this case, Plaintiff presented to any of the CMS Defendants with an AIDS-defined illness. Therefore, whether Plaintiff was required to receive treatment for his HIV infection was dependent on his CD4 levels.

On February 6, 2007, Plaintiff was tested for HIV. (Dkt. No. 51, Ex. A, p. 197). This test was positive for the presence of HIV. *Id.* On February 20, 2007, Plaintiff was again tested for HIV; this confirmatory test was also positive for HIV. (Dkt. No. 51, Ex. A, p. 196). On March 9, 2007, Plaintiff was evaluated by physician at JMF. (Dkt. No. 51, Ex. A, p. 1076). During this visit, the physician: noted Plaintiff's new HIV-positive status; determined that Plaintiff was asymptomatic and counseled Plaintiff regarding HIV infection. (Dkt. No. 51, Ex. A, p. 1076). On the same date, Plaintiff signed an "HIV Positive Post-Test Counseling Verification" form, acknowledging his HIV-positive status, and acknowledging that he received HIV counseling. (Dkt. No. 51, Ex. A, p. 458).

---

[3] Thus, as of October 10, 2006, the DHHS recommended that ART should be initiated for asymptomatic HIV-positive patients who had a CD4 count of < 200 cells/mm$_3$. (Dkt. No. 51, Ex. B) As of December 1, 2007, ART should be initiated for asymptomatic HIV-positive patients who had a CD4 count of < 350 cells/mm$_3$. (Dkt. No. 51, Ex. C) And, beginning with its December 2009 guidelines, DHHS added the *recommendation* that ART may also be initiated in patients with CD4 levels between 350 and 500 cells/mm$_3$.

Over the next 20 months, notwithstanding several missed or rescheduled appointments, Plaintiff's CD4 levels were checked *five* times[4]: Plaintiff's April 18, 2007 blood tests revealed the following: CD4: 562/uL[5] (Dkt. No. 51, Ex. A, p. 193, 195); Plaintiff's January 28, 2008 CD4 level was 453/uL (Dkt. No. 51, Ex. A, p. 1171-1172, 1184); on July 1, 2008, Plaintiff's CD4 was 535/uL and 46.6% (Dkt. No. 51, Ex. A, p. 181); on October 16, 2008, Plaintiff's CD4 level was 334/uL (Dkt. No. 51, Ex. A, p. 1189, 1225). On November 13, 2008, Plaintiff's HIV labs were repeated. (Dkt. No. 51, Ex. A, p. 1201). This time, Plaintiff's CD4 level was 371/uL. (Dkt. No. 51, Ex. A, p. 1201).

Plaintiff filed the instant lawsuit on February 6, 2009. Plaintiff's post-lawsuit blood draw, of September 24, 2009, indicated that Plaintiff's CD4 level was 428/uL (Dkt. No. 51, Ex. A, p. 1160, 1231).

### III. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3rd Cir. 2006). For a fact to

---

[4] Checking CD4 levels five times over a 20 month period is consistent with the DHHS guidelines, which recommend that CD4 levels be checked every 3-4 months (or 5-6 times over a 20-month period). *See*, the 2011 DHHS guidelines, p. 7. Plaintiff's CD4 levels were not checked at regular 3-4 month intervals; however, this was, in part, the result the failure of non-defendant third parties to carry out ordered blood tests. *See, for example*, Docket Number 51, Exhibit A, pp. 1021 and 1014.

[5] A cubic millimeter ($mm_3$) = A microliter (uL). *See*, www.i-base.info/qu/faq.

be material, it must have the ability to "affect the outcome of the suit under governing law." *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. If the moving party can make such a showing, then the burden shifts to the nonmoving party to present evidence that a genuine fact issue exists and a trial is necessary. *Id.* at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. *Id.* at 251-52.

### IV.  ANALYSIS

A.  *Eighth Amendment Denial of Adequate Medical Care*

    1.  **Plaintiff's claims against Drs. Hutchinson and Piper must be dismissed**

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner

must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Nor is Plaintiff entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir.1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

As it relates to the instant motion, Plaintiff has not contested the lab results regarding his CD4 levels. Instead, he argues that the delay in starting ART, "resulted in further injury and/or

worsening of Plaintiff's condition." (Dkt. No. 54, p. 3) Plaintiff also claims to have "learned" that DHHS guidelines have "changed in recent years to a recommended minimum of 500 cell/mm$_3$." *Id*. at p. 8. Fatal to his lawsuit – Plaintiff is only partially correct. As detailed above, treatment with ART is currently *recommended but not required* for CD4 levels between 350 and 500 cells/mm$_3$. Further, this recommendation has only been in effect since December 2009 (after Plaintiff filed his lawsuit).

Of Plaintiff's six tests, his CD4 level fell below 350 – to 334 cells/mm$_3$. – just one time. Pursuant to protocol, Plaintiff was promptly retested and his CD4 level was 371 cells/mm$_3$. After Plaintiff filed suit, his CD4 level remained above 350 at 428 cells/mm$_3$. Therefore, since Dr. Hutchinson appropriately relied on Plaintiff's CD4 levels in declaring Plaintiff ineligible for ART, Plaintiff cannot establish that either Dr. Hutchinson or Dr. Piper – who reasonably relied on the evaluation of Dr. Hutchinson (an HIV specialist) (Dkt. No. 51, Ex. A, p. 965; Ex. E) – subjectively perceived facts from which to infer substantial risk to Plaintiff and then disregarded that risk in violation of the Eighth Amendment.[6] Simply put, based on Plaintiff's CD4 levels, treatment was simply not required, and Plaintiff's claims against Drs. Hutchinson and Piper must be dismissed.

    **2.     Plaintiff's claims against CMS must be dismissed**

To hold a municipality liable under 42 U.S.C. § 1983, there must be proof of personal involvement. *Monell v. Dep't of Social Services of New York City*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978); *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). Thus, the Supreme Court has held that "it is when execution of a government's policy . . . inflicts the injury that the government

---

[6] It is also clear from the record that Plaintiff received counseling and education regarding his HIV status. (Dkt. No. 51, Ex. A, p. 458)

as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. In order to satisfy the requirements set forth in *Monell*, a Plaintiff must identify a particular policy, connect the policy to the municipality, and demonstrate that the particular injury alleged resulted from the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). While *Monell* involved a municipality, its holding extends to private corporations, such as CMS. *Street v. Corrections Corporation of America*, 102 F.3d 810, 817-18 (6th Cir. 1996).

Here, other than Plaintiff's unsupported allegations, there is no evidence that CMS is connected to an unconstitutional policy, practice, procedure, or custom of denying HIV treatment for profit motives. To the contrary, Plaintiff's medical records indicate that CMS responded to requests that Plaintiff be evaluated by an Infectious Disease specialist by noting, at least four separate times, that such requests had been approved. (Dkt. No. 51, Ex. A, p. 1067, 1009, 989, 969). Accordingly, Plaintiff's claims against CMS must also be dismissed.

### 3. Plaintiff's infliction of emotional distress claims must be dismissed.

Finally, Plaintiff's claims for intentional and/or negligent infliction of emotional distress must be dismissed. A claim of intentional infliction of emotional distress under Michigan law requires Plaintiff to establish four elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985)(internal quotation marks omitted). Again, being consistent with DHHS guidelines, the conduct of the CMS Defendants in not providing ART was neither extreme nor outrageous as a matter of law and, therefore, cannot support a claim for negligent or intentional infliction of emotional distress.

## V. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the CMS Defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED** and Plaintiff's lawsuit **DISMISSED WITH PREJUDICE**.

## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

***Note this especially, at the direction of Judge Cleland:*** any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of objections, the opposing party must file a concise response proportionate to the objections in length and complexity.

The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                                       s/Mark A. Randon
                                                       MARK A. RANDON
                                                       UNITED STATES MAGISTRATE JUDGE

Dated: January 13, 2011

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 13, 2011, electronically and by first class mail.*

                                                       *s/Melody R. Miles*
                                                       *Case Manager to Magistrate Judge Mark A. Randon*

*A copy has been mailed to:*

      **Reginald Underwood** #559281
      *RYAN CORRECTIONAL FACILITY*
      *17600 RYAN ROAD*
      *DETROIT, MI 48212*